IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TODD BREWER WEEKS, #A0163850, | ) ) ) | CIVIL NO. 10-00305 JMS/KSC |
| Plaintiff, | ) ) ) | ORDER DISMISSING COMPLAINT IN PART |
| vs. | ) ) | |
| NOLAN ESPINDA, DR. ROSEN, DR. PADERES, JANICE KALUA, and DEANNA ESPINAS, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER DISMISSING COMPLAINT IN PART**

Before the court is Plaintiff Todd Brewer Weeks' ("Plaintiff") prisoner civil rights complaint. Plaintiff is incarcerated at the Halawa Correctional Facility ("HCF") and is proceeding pro se. For the following reasons, the Complaint is DISMISSED in part. Count I shall proceed and be served on Defendants Rosen and Paderes. Count II is DISMISSED with prejudice. Count III is DISMISSED without prejudice to refiling in a separate action, insofar as it is amended to allege sufficient facts against correctly named defendants.

**I. BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff recently filed another prisoner civil rights action in this court that was dismissed in part with leave to submit one claim in another action. *See*

*Weeks v. Frank, et al.*, Civ. No. 10-00235 DAE-LEK, Order Dismissing Complaint In Part (D. Haw. Apr. 27, 2010) (holding that Plaintiff's claims were unrelated and improperly brought in one action, and dismissing Count Five without prejudice to initiating a new action alleging the claim).  The present lawsuit is Plaintiff's attempt to commence a new action asserting his previously dismissed claim in Count Five of that action.  Plaintiff, however, did not heed the court's directions in Civ. No. 10-00235, and has again improperly submitted wholly unrelated claims against unrelated defendants in this action.

Plaintiff first alleges that HCF Medical Director Dr. Rosen, and HCF Physician Dr. Paderes, knowingly and with deliberate indifference housed him with inmates who were infected with tuberculosis, causing Plaintiff to test positive for tuberculosis, in violation of the Eighth Amendment (Count I).

Plaintiff next alleges that HCF Librarian IV Janice Kalua verbally harassed him for raising complaints with the Ombudsman and for filing grievances regarding HCF's allegedly inadequate law library, violating the First Amendment (Count II).  Plaintiff complains that he notified HCF Library Services Officer Deanna Espinas, Kalua's supervisor, of Kalua's behavior and Espinas failed to take action.  Plaintiff vaguely suggests that Kalua's alleged harassment, and the prison law library's alleged inadequacies, infringed his right of access to the courts.

Finally, Plaintiff alleges that, despite a Department of Public Safety ("DPS") directive forbidding cigarette smoking within the prison, unnamed HCF prison staff (case managers and corrections officers) smoke with impunity, thereby exposing Plaintiff to secondhand smoke, allegedly violating the Eighth Amendment (Count III). Plaintiff declines to name any individual who actually smoked, stating he will reveal their names to the court later, but names only Warden Nolan Espinda as responsible for his employees' behavior under a theory of respondeat superior.

## II. STATUTORY SCREENING OF PRISONER COMPLAINTS

The court is required to screen all complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if a plaintiff raises claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2), § 1915(e)(2).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 1951. If a pleading can be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc).

### III.  DISCUSSION

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'"  *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 129 S.Ct. 2431 (2009); *West v. Atkins*, 487 U.S. 42, 48 (1988).

Although pro se pleadings are liberally construed, *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.  *Id.*

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  There is no respondeat superior liability under § 1983, therefore, a defendant's position as supervisor of persons who allegedly violated Plaintiff's constitutional rights does not subject the supervisor to vicarious liability.

### A.     Count I Shall Proceed and Be Served

Plaintiff claims that before he was transferred to HCF he never tested positive for tuberculosis. Plaintiff claims that after he transferred to HCF, Drs. Rosen and Paderes housed him with inmates who are or were infected with tuberculosis; Plaintiff thereafter tested positive for tuberculosis exposure.[1] Plaintiff alleges that there was a policy or practice at HCF of housing non-infected inmates with infected inmates, presumably promulgated and enforced by Drs. Rosen and Paderes. Plaintiff alleges that placing him in a unit with infected inmates exhibits deliberate indifference to his health and safety. Count I states a claim against Drs. Rosen and Paderes and shall proceed.

### B.     Counts II and III Are Dismissed

Count II alleges that Kalua harassed Plaintiff for filing grievances and complaints with the Ombudsman, and Espinas failed to stop the harassment, violating the First Amendment. Count III alleges that Espinda, in his capacity as warden, was responsible for unnamed HCF employees smoking in the control rooms and Main Street areas of the prison, exposing Plaintiff to secondhand smoke in violation of the Eighth Amendment and state law.

---

[1] It is unclear if Plaintiff tested positive for exposure to tuberculosis or if Plaintiff contracted tuberculosis. Under either interpretation, however, Plaintiff states a claim.

### *1. Rules 18 and 20 of the Federal Rules of Civil Procedure*

The claims in Counts II and III are completely unrelated to the claims in Count I and name defendants who are not mutually responsible for both claims. As such, the Complaint violates Federal Rules of Civil Procedure 18 and 20.

Under Rule 18(a), governing joinder of claims, a plaintiff may bring multiple claims, related or not, in a lawsuit against a single defendant. To name different defendants in the same lawsuit, however, a plaintiff must satisfy Rule 20, governing joinder of parties. Under Rule 20(a)(2), permissive joinder of multiple defendants in a single lawsuit is allowed only if: (1) a right to relief is asserted against each defendant that relates to or arises out of the same transaction or occurrence or series of transactions or occurrences; and (2) any question of law or fact common to all defendants arises in the action. Unrelated claims involving different defendants belong in different suits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001).

Although pro se litigants are held to less stringent standards than represented parties, *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003), they must comply with the procedural or substantive rules of the court. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Requiring pro se prisoners to adhere to the

federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]," avoids confusion, ensures that prisoners pay the required filing fees, and prevents prisoners from circumventing the PLRA's three strikes rule.  *George*, 507 F.3d at 607; see *also Patton v. Jefferson Corr'l Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision).

Plaintiff's claim in Count I, that Rosen and Paderes knowingly exposed him to inmates infected with tuberculosis, resulting in Plaintiff testing positive for tuberculosis, is completely separate from his claims in Counts II and III.[2]  The claims in Counts I, II, and III are clearly separate violations allegedly done by different individuals that did not arise from the same transaction or occurrence or series of transactions or occurrences.  Thus, they cannot be joined in the same action.

---

[2] The court recognizes that Plaintiff may be attempting to hold Espinda responsible for Rosen and Paderes's decision to allegedly house Plaintiff with tubercular inmates. If true, then Plaintiff could possibly allege the claims in Counts I and III against Espinda in one complaint. Plaintiff does not state this in the Complaint, however, and nowhere in Count I does Plaintiff mention Espinda or recite facts suggesting that Espinda is responsible for the claims in Count I as well as in Count III.  Moreover, as discussed *infra*, Plaintiff fails to state a claim against Espinda in Count III.

### *2. Count II Fails to State a Claim*

Plaintiff complains that Kalua verbally harassed him for complaining in grievances and to the Ombudsman about the HCF law library's alleged inadequacy. Allegations of verbal harassment or verbal abuse by themselves do not rise to the level of a constitutional deprivation under 42 U.S.C. § 1983. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).

Plaintiff also complains that Espinas failed to take action regarding Kalua's verbal abuse and was therefore "grossly negligent." Compl. at 2-B. Because the verbal abuse itself did not violate the constitution or laws of the United States, it follows that Espinas's alleged failure to prevent or stop the verbal harassment did not violate them either. Moreover, Plaintiff names Espinas only because she is Kalua's supervisor, claiming she is "responsible under 'respondeat superior.'" Compl. at 6. Liability under § 1983, however, cannot be predicated on the theory of respondeat superior or vicarious liability. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under § 1983, a supervisor is liable for a subordinate's conduct only if there exists either "(1) his or her personal involvement in the constitutional deprivation *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."

*Mackinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995). Nor can an allegation of gross negligence support a claim under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

        Finally, to the extent Plaintiff attempts to set forth a claim of denial of access to the court as a result of either Kalua's alleged verbal harassment or the law library's alleged inadequacy (although this is not clear from the Complaint[3]), he fails. To state a claim for denial of access to the courts, an inmate must show a specific instance in which he was actually deprived of access to court. *See Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989). Denial of access to the court claims may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002). A plaintiff must allege facts demonstrating that he suffered an actual injury by being shut out of court. *Id.* at 415; *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In other words, a claim for deprivation of the constitutional right of access to the courts must allege both the underlying cause of action, whether that action is merely anticipated or already lost, and the official acts that frustrated the

---

[3] Although Plaintiff could have checked the "Access to the court" box on the Complaint's form, indicating that he was attempting to state a claim under this category also, he did not. *See* Compl. at 6, Count II. Plaintiff only checked the "Other" box, adding "Harassment," as the basis for this claim.

litigation.  *Harbury*, 536 U.S. at 415-16.

Kalua's alleged harassment cannot be transformed into a denial of access to the court claim without some statement showing that Kalua's alleged harassment frustrated litigation in an actual case, whether ongoing or contemplated.  Nor do Plaintiff's vague claims of an allegedly inadequate law library bolster his denial of access to the courts allegations against Kalua or Espinas.  *See Lewis*, 518 U.S. at 351 (stating that inmates do not have "an abstract, freestanding right to a law library or legal assistance, [therefore,] an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense").  The scope of the right of access to the courts is limited.  Prisoners need only have "the minimal help necessary" to file legal claims.  *Id.* at 360.  The Constitution does not even mandate "that prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts."  *Id.*  Thus, an allegedly inadequate law library cannot establish a denial of access to the court.

More importantly, Plaintiff admits that he was able to contact the Ombudsman with his complaints, and that he was able to file grievances.  Further, Plaintiff has brought his harassment and inadequate law library claims, among others, to this court.  Plaintiff therefore had the capability to raise his claims -- all

that is required under the Constitution. He cannot establish an actual injury in that he cannot show he has been unable to file his claims.

Count II, and Plaintiff's claims against Defendants Kalua and Espinas, are DISMISSED for failure to state a claim. Because the allegation of other facts will not cure the deficiencies in this claim, amendment to this claim is futile, and dismissal of this claim is without leave to amend.

### 3. *Count III Fails to State a Claim*

Plaintiff alleges that unnamed prison staff carelessly smoked in certain areas of the prison in direct violation of DPS regulations forbidding smoking in the prison. Plaintiff claims that such smoking violates his rights under the Eighth Amendment, and that Warden Espinda is responsible for these prison employees' behavior on a theory of respondeat superior. *See* Compl. Count III at 7.

As noted above, respondeat superior liability of a supervisory public official does not exist under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To state a claim against Espinda for his employees' smoking, Plaintiff must show that Espinda was personally involved in the constitutional violation, or show a significant causal connection between Espinda's allegedly wrongful conduct and the constitutional violation. *See Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991). That causal connection may be

supported with allegations that the supervisor "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of L. A.*, 946 F.2d 630, 646 (9th Cir. 1991) (citations omitted). Plaintiff makes no such allegations against Espinda here.

Nor can Plaintiff sustain a claim against Espinda based on a policy or procedure he promulgated that led to his employees' smoking, when, as Plaintiff alleges, there is a DPS policy against smoking in the prison. *See Redman*, 942 F.2d at 1446 (holding that a supervisor may be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation") (citations omitted).

Finally, Plaintiff alleges that the unnamed prison employees who smoked in violation of DPS policy did so "careless[ly]." Compl., Count III at 7. Exposure to levels of environmental tobacco smoke ("ETS") that pose an unreasonable risk of serious damage to a prisoner's future health may state a cause of action under the Eighth Amendment where prison officials acted with deliberate indifference. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The objective factor requires that the prisoner "show that he himself is being exposed to unreasonably high levels of ETS" and that the "risk of which he complains is not one that today's

society chooses to tolerate." *Id.* at 35-6. The subjective factor requires that the prisoner demonstrate that prison officials acted with deliberate indifference in exposing him to ETS. *Id.*

Based on the facts Plaintiff alleges in Count III, it does not appear that Plaintiff is being exposed to *unreasonably* high levels of ETS. Plaintiff states the prison staff smoke on "Main Street," and in their control room, and it "drifts down into living quarters," or he is exposed to the smoke when he retrieves mail from the enclosed mail room. This does not appear to support a finding of unreasonable exposure to secondhand smoke.

Even if society is no longer willing to tolerate any amount of secondhand smoke, however, Plaintiff only alleges that prison staff were "careless." Compl. at 7. Careless behavior, like negligent behavior, does not exhibit the requisite intent, or "deliberate indifference," required to state a claim for an Eighth Amendment violation. The test for deliberate indifference is that "the [prison] official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Thus, the prison official must have a "sufficiently culpable state of

mind." *Id.* at 834. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Careless behavior does not equate to "deliberate indifference" to an inmate's health and safety. Moreover, the facts Plaintiff sets forth in support of this claim tend to show that the prison staff's smoking, while discourteous and in violation of prison rules, was not done with the necessary intent to expose HCF inmates in general, or Plaintiff in particular, to unreasonable levels of ETS. The facts show that the smoking took place in areas where inmates had only incidental exposure to the smoke. As such, Count III fails to state a claim and is DISMISSED without prejudice to Plaintiff's bringing it in a separate action, properly alleging a constitutional violation, and naming the individuals actually responsible for Plaintiff's alleged exposure to ETS

## IV.  CONCLUSION

The Complaint is DISMISSED in part. Specifically:

1. Count I states a claim and shall proceed and be served on Defendants Rosen and Paderes.

2. Count II fails to state a claim and is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Because amendment is futile, Count II is DISMISSED with prejudice and without leave to amend.

3. Count III fails to state a claim and is DISMISSED without

prejudice pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Plaintiff may file a separate complaint and action realleging the claims in Count III, after he cures the deficiencies in the claim as discussed above.

        4. The court shall issue an order directing service of the Complaint and its claims in Count I against Defendants Rosen and Paderes. Plaintiff SHALL NOT attempt to serve the Complaint until the court has entered a service order. Plaintiff is further DIRECTED that he may not file any motions, requests, or other documents in this action, other than a motion for appointment of counsel, until the Complaint has been served and Defendants Rosen and Paderes's attorney(s) have made an appearance in this action.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, June 2, 2010.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*Weeks v. Espinda, et al.*, Civ. No. 10-00305 JMS/KSC; Order Dismissing Complaint In Part; pro se attys/Screening/dmp/ 2010 /Weeks 10cv305 JMS (dsm in part)