THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TODD BREWER WEEKS, #A0163850, | ) ) | CIV. NO. 10-00305 JMS-KSC |
| | ) | ORDER DENYING MOTION TO |
| Plaintiff, | ) | DISMISS COMPLAINT FOR |
| | ) | FAILURE TO EXHAUST |
| vs. | ) ) | |
| NOLAN ESPINDA, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER DENYING MOTION TO DISMISS COMPLAINT FOR FAILURE TO EXHAUST

Plaintiff Todd Brewer Weeks ("Plaintiff") brings this action against the remaining Defendants J. Marc Rosen, M.D. and Sisar Paderes, M.D. ("Defendants"), pursuant to 42 U.S.C. § 1983.  Plaintiff, a pro se inmate, alleges that Defendants violated his constitutional rights when they knowingly exposed him to other inmates who were infected with tuberculosis, resulting in his positive tuberculosis test.

Before the court is Defendants' Motion to Dismiss Complaint for Plaintiff's alleged failure to exhaust administrative remedies.  Plaintiff has filed his

Opposition and Defendants have replied.  Based on the following, the court

DENIES Defendants' Motion to Dismiss Complaint.[1]

## I. <u>LEGAL STANDARD</u>

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),

"[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e(a).  Prisoners are generally required to exhaust

available administrative remedies prior to filing suit.  *Jones v. Bock*, 549 U.S. 199,

211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (per

curiam).  Exhaustion is required regardless of the relief sought by the prisoner and

regardless of the relief offered through administrative procedures.  *Booth v.*

*Churner*, 532 U.S. 731, 741 (2001).  The exhaustion requirement applies to all

prisoner suits relating to prison life.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Section 1997e(a) does not impose a pleading requirement, but rather

provides an affirmative defense under which defendants have the burden of raising

and proving the absence of exhaustion.  *Jones*, 549 U.S. at 216; *Wyatt v. Terhune*,

---

[1] This matter is suitable for disposition without a hearing pursuant to the Local Rules of Practice for the United States District Court for the District of Hawaii, LR 7.2(d).

315 F.3d 1108, 1119 (9th Cir. 2003).  The failure to exhaust prison administrative

remedies is subject to an unenumerated Rule 12(b) motion, rather than a summary

judgment motion.  *Wyatt*, 315 F.3d at 1119 (citing *Ritza v. Int'l Longshoremen's &*

*Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1998) (per curiam)).  In

deciding a motion to dismiss for failure to exhaust administrative remedies, the

court may look beyond the pleadings and decide disputed issues of fact.  *Wyatt*,

315 F.3d at 1119-20.

## II.  BACKGROUND

Plaintiff says that when he was transferred to Hawaii from Arizona in

December 2009, he was placed in the general population at the Halawa

Correctional Facility ("HCF") with inmates who were infected with tuberculosis

("TB") .  Plaintiff claims that he had never tested positive for TB prior to his

transfer to HCF in 2009, and has now tested positive.  Plaintiff alleges that

Defendants are therefore directly responsible for his exposure to the disease

because they knowingly housed him with TB infected inmates with deliberate

indifference to his health.  Plaintiff commenced this action on May 20, 2010, when

he handed his Complaint to prison officials for mailing to this court.  *See Douglas*

*v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (holding that the prison mailbox

rule, deeming a document is filed when it is handed to prison authorities for mailing, applies to § 1983 suits).

Defendants argue that Plaintiff failed to properly exhaust his prison administrative remedies in compliance with the Hawaii Department of Public Safety's ("DPS") regulations governing inmate grievances, by failing to file any final Step 3 appeal of his grievances concerning this issue.  Defs.' Mot. 6.

**A.    Hawaii's Administrative Exhaustion Procedure**

The PLRA requires "proper" exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90.  This is so "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91. Requiring prisoners to properly exhaust their claims furthers the PLRA's goal of efficiency by "'reduc[ing] the quantity and improv[ing] the quality of prisoner suits.'"  *Id.* at 94 (quoting *Porter*, 534 U.S. at 524).  Requiring proper exhaustion advances this goal by: (1) "giv[ing] prisoners an effective incentive to make full use of the prison grievance process;" (2) reducing prisoner suits, as some prisoners are "persuaded by the proceedings not to file an action in federal court;" and

4

(3) improving the quality of any remaining prisoner suits "because proper exhaustion often results in the creation of an administrative record that is helpful to the court." *Id.* at 94-95.

Hawaii's prison system's requirements, as set forth in the DPS Policies and Procedures Manual ("PPM") (1992) § 493.12.03(4.0), "define the boundaries of proper exhaustion." *See Jones,* 549 U.S. at 218; *see also* Defs.' Suppl. Br., Ex. A.  The rules establish a three-step process for exhausting an administrative appeal -- the inmate must submit a grievance at each step and wait either for a response to that grievance or for the time to expire for receiving a response before moving on to the next step.  *See* PPM § 493.12.03.13–15.

At Step 1, the inmate must submit a grievance to a Unit or Section Manager within fourteen days of the date on which the complained-of action occurred.  *See* PPM § 493.12.03.13(i).  The Unit or Section Manager has fifteen working days from the date of receipt of the grievance during which to investigate and respond.  PPM § 493.12.03.14(h).  If the inmate receives an adverse determination at Step 1, the inmate has up to five days to file a Step 2 appeal from the Unit Manager's decision with the Facility Administrator.  PPM §§ 493.12.03.14(k) and 493.12.03.15(a).

The Facility Administrator then has fifteen working days from the date of receipt of the Step 2 appeal to submit a written response to the inmate. PPM § 493.12.03.15(e).  If the inmate again receives an adverse determination, the inmate has up to five days to file a Step 3 appeal with the Division Administrator. PPM § 493.12.03.15(f).  The Division Administrator has twenty working days from the date of receipt of the inmate's Step 3 appeal within which to submit a written response to the inmate.  PPM § 493.12.03.15(g)(6).  The Division Administrator's decision is final.  PPM § 493.12.03.16.

If an inmate refuses to sign for receipt of a grievance response, the grievance is considered concluded per PPM § 493.12.03.4.14(j)(4).  Further, if the facility fails to respond to an inmate's initial grievance or appeal within the time allowed, the inmate may proceed to the next step in the grievance process, unless the inmate agrees in writing to a extension of time for response.  *See* PPM § 493.12.03.14(i, l).

**B.     Plaintiff's Grievances**

Defendants assert that Plaintiff filed three grievances concerning his claim that they knowingly exposed him to TB before he commenced this action, and submit copies of these grievances and the prison's responses to them.  *See*

Defs.' Mot., Doc. 21-2, Mun Dec.; Doc. 21-3, Ex. A, 1-5, Grievances #165523,
#165550, #165567.

Plaintiff, however, submits a *fourth* grievance, #165520, as well as the
prison's response to that grievance.  Pl.'s Opp'n, Doc. 29-1. The court examines
each of the four grievances with reference to DPS's administrative grievance
policies to determine whether Plaintiff properly exhausted his claim prior to filing
this suit.

### 1.    *Grievance #165520*

In this grievance, dated March 7, 2010, Plaintiff states that he was told
on February 9, 2010, that he tested positive for TB and complains that in mid-
January he began to feel sick and have chest problems.  Plaintiff attempted to
informally grieve the matter with "Nurse Steve," who apparently told Plaintiff that
nothing could be done until the results of a chest x-ray were received.  Plaintiff was
still awaiting the results of the x-ray when he filed this grievance.

Respondent Linda Rivera replied on March 9, 2010, and Plaintiff
received the response on March 11, 2010.  Rivera did not specifically deny the
grievance, but rather, she stated that she was returning the grievance because:
(1) Plaintiff incorrectly marked it as a Step 2 without reference to the specific Step
1 grievance decision he was appealing; (2) if Plaintiff's problem dates from
"2/9/10; 12/19/09/ 12/1/09," dates referred to in the grievance, then Plaintiff failed

to file the grievance within fourteen days of the initial incident; (3) if Plaintiff got sick in mid-January as he claims, he failed to grieve or indicate the grievance number of any complaint regarding that incident; and (4) if Plaintiff is complaining of a medical issue, the Warden cannot be the respondent, and if he is complaining of a housing issue, then he must file a separate grievance regarding that claim. Rivera informed Plaintiff that he had five calendar days to resubmit a grievance or grievances correcting the errors enumerated above.

The prison took no formal action regarding Plaintiff's claims in this grievance, neither denying nor upholding his claims. As discussed below, the prison also accepted and acted on Plaintiff's grievances submitted after this response curing the defects noted by Rivera. It does not appear, therefore, that this grievance commenced the grievance process regarding Plaintiff's claims.

### 2.   *Grievance #165523*

Plaintiff filed this grievance on March 11, 2010, the same day that he received the response to Grievance #165520. Plaintiff names the prison's doctors and staff, and complains that he was exposed to TB because Defendants knowingly housed him with inmates who had the disease. Plaintiff also says "Kath @ Med. clinic" told him that, because he tested positive, he must begin treatment, presumably to prevent him from becoming ill with TB. Doc. 29-1 at 4.

On April 15, 2010, M. Tumminello responded to this grievance. Tumminello acknowledged that Plaintiff had tested positive for TB, but disclaimed responsibility for this on HCF's part, because Plaintiff's last TB test had been done in Arizona in February 2009, and he could have been exposed to the disease at any time during the interim.  Tumminello also noted that Plaintiff's chest x-ray, which apparently was received after Plaintiff filed this grievance, was negative for the disease.  Plaintiff was informed that he had five calendar days to appeal.  Plaintiff received this response on April 20, 2010, *thirty working days* after filing Grievance #165523.

### 3.   *Grievances #165550 and #165567*

On April 2, 2010, before receiving Tumminello's denial of Grievance #165523, but *fifteen working days* after he had submitted this grievance, Plaintiff submitted a Step 2 appeal, Grievance #165550, as was his right under Hawaii's grievance regulations.  *See* PPM § 493.12.03.14(i) and (l).

On April 22, 2010, fifteen working days after submitting Grievance #165550, but only *two* days after receiving the denial of Grievance #165523, Plaintiff filed his Step 3 appeal, Grievance #165567.  Plaintiff clearly noted that he was filing this grievance because he had received no response to his Step 2 Grievance #165550.  Someone crossed out Plaintiff's designation of this grievance as his Step 3 appeal, and re-marked it as a Step 2 appeal of Grievance #165523.

*See* Doc. 21-3, Ex. A at 4; *see also* PPM § 493.12.03.14(c)(3) (stating "Staff will not alter the form or refuse to accept same.").[2]

As noted above, on May 20, 2010, after receiving no response to his third grievance within the required *twenty* working days, Plaintiff commenced this action.

On July 22, 2010, long after the time for the prison's response to either Grievance #165550 or Grievance #165567 had expired, Deborah Stampfle denied them both. Stampfle states that the delay in answering Plaintiff's grievances was due to an unexpected illness lasting several months. Doc. 32-1, Stampfle Decl. ¶ 8.

### III.  ANALYSIS

All that is required to "properly exhaust" a grievance is compliance with prison grievance procedures. *Jones*, 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion." *Id.* In other words, a grievant must

---

[2] Plaintiff claims the grievance was "altered by [the] person responding." Deborah Stampfle, who responded to the grievance, denies that she altered the grievance. Stampfle Decl. ¶¶ 6-7. Stampfle admits that she has received grievances altered by the Grievance Office, and would normally return the form to the Grievance Office, but states that she did not notice the alteration to this grievance. The court will not address the parties' arguments on this issue because they are immaterial to a determination of this Motion.

use all steps the prison holds out, and do so properly, to enable the prison to reach the merits of the issue, and to properly exhaust his claims.  *Ngo*, 548 U.S. at 90.

Plaintiff followed the DPS's rules and procedures when he grieved the issue herein.  After Grievance #165520 was returned to him with instructions to correct its errors and refile, Plaintiff did so within the five days allowed.  Plaintiff filed Grievance #165523 and then waited fifteen working days for a response. When he received no response, Plaintiff filed a Step 2 appeal, Grievance #165550. Plaintiff waited an additional fifteen working days, and again receiving no response (although he had received a response to Grievance #165523 in the interim), Plaintiff filed his final Step 3 appeal, Grievance #165567.  Plaintiff then waited twenty working days for a response, and when none was forthcoming, he commenced suit.

Having informed Plaintiff how to file a proper grievance, telling him that he had five days to correct the problems in his first submission, and failing to timely respond to either of Plaintiff's final two grievances, Defendants cannot now assert that Plaintiff failed to exhaust his claims when he clearly followed the grievance coordinator's instructions, and the DPS Policy and Procedure Manual. Moreover, although Rivera mentioned that Plaintiff had only fourteen days from the date the problem challenged occurred, it is far from clear when those fourteen days began in Plaintiff's situation.  He transferred to HCF in December, but was

11

not told that he was TB positive until February, and was still awaiting the results of his x-ray when he submitted his first two grievances.  Plaintiff was naturally concerned because he had been told by two HCF nurses that he had to begin treatment and more than a month had passed since he tested positive.  Plaintiff acted reasonably in response to Rivera's memorandum and instructions.  Under these circumstances, Defendants also cannot assert that Plaintiff's grievances were untimely.

While it is unfortunate that Stampfle was unable to timely respond to Plaintiff's grievances due to illness, that did not abrogate DPS's policy allowing Plaintiff to proceed with the grievance process after waiting the required amount of days for the prison's response and receiving none.  Plaintiff fully grieved this claim and Defendants' Motion to Dismiss the Complaint is DENIED.

//

//

//

//

//

//

//

//

## IV.  **CONCLUSION**

Plaintiff fully complied with the DPS Policies and Procedure Manual governing grievances.  As such, he exhausted his claims in this action. Defendants' Motion to Dismiss the Complaint for failure to exhaust administrative remedies is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 25, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Weeks v. Espinda, et al.*, Civ. No. 10-00305 JMS, Order Denying Motion to Dismiss Complaint for Failure to Exhaust; psa/ords/dmp 2010/Weeks 10-305 (m.dsm exh)